# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MELISSA MILWARD, ELYSE UGALDE**
**and ASHLEY ROSE,**

      **Plaintiffs,**

v.                                                    Case No:   6:15-cv-785-Orl-31TBS

**LINDA SHAHEEN, BARBARA BALL,**
**MAUREEN BUGNACKI, SUDA AMODT**
**and DISTRICT BOARD OF TRUSTEES**
**OF VALENCIA COLLEGE, FLORIDA,**

      **Defendants.**

## ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 83) filed by the Defendants, the District Board of Trustees of Valencia College, Florida (Valencia), Barbara Ball, Linda Shaheen, Maureen Bugnacki, and Suda Amodt (collectively the Individual Defendants); and the Response in Opposition (Doc. 88) filed by the Plaintiffs, Melissa Milward, Elyse Ugalde, and Ashley Rose.

**I.**     **Background**

The Plaintiffs are former students of Valencia College's Medical Diagnostic Sonography Program, a highly competitive program that only admits twelve students per year. (Doc. 75 ¶ 32.) Valencia is a statutorily-created board of trustees that governs Valencia College and is a subdivision of the State of Florida. (*Id.* ¶¶ 22–24.) This matter arises from the Valencia sonography program's practice of allegedly coercing students into performing invasive transvaginal ultrasounds on each other in a clinical laboratory setting.

The suit names as defendants several employees of Valencia College—Barbara Ball, the Program Chair, Linda Shaheen, the Clinical and Laboratory Coordinator, Maureen Bugnacki, a Lab Technician, and Suda Amodt, a Laboratory and Physics Instructor—as well as Valencia itself. (*Id.* ¶¶ 19–28.) In addition to working for Valencia, Suda Amodt is a medical sonographer at Dr. P. Phillips Hospital. (*Id.*)

The Plaintiffs enrolled in the sonography program in 2013. (*Id.* ¶ 34.) As part of the program, students underwent transvaginal ultrasounds. This procedure was represented as voluntary, but Valencia's policy and procedures effectively made it mandatory. These ultrasounds are invasive, sometimes painful, and leave the participant-patient exposed to the classroom, teachers, and passersby.

The Plaintiffs objected to undergoing the ultrasounds. (*Id.* ¶¶ 36, 57, 60.) In response, the Individual Defendants harassed and threatened the Plaintiffs. (*Id.* ¶¶ 43–45, 75.) The alleged harassment included threatening the Plaintiffs' grades, threatening the Plaintiffs' future employment, threatening to force the Plaintiffs out of the program, and threatening to exclude the Plaintiffs from in-class labs. (*Id.* ¶¶ 38–45.)

In March 2014, Milward and Ugalde eventually agreed to the ultrasound procedures, allegedly under protest. Rose refused and suffered academically. (*Id.* ¶¶ 49–68.) The Plaintiffs complained about the harassment, threats, and procedure to Defendants Ball and Shaheen, respectively, the Program Chair and Laboratory Coordinator of the program, as well as Valencia's Dean of Academic Affairs and the President of Valencia's west campus. (*Id.* ¶¶ 69–74.) Despite these complaints nothing changed, and the Plaintiffs eventually resigned from the program as a result.

The Plaintiffs bring a number of claims against Valencia and the Individual Defendants. They claim that the Individual Defendants are liable under 42 U.S.C. § 1983 for violating their First, Fourth, and Fourteenth Amendment rights (Counts I, II, and III). They further claim that the Individual Defendants conspired to deprive them of their rights (Count IV). Additionally, the Plaintiffs allege that the Individual Defendants are liable under Florida law for battery, intentional infliction of emotional distress, and negligent infliction of emotional distress (Counts VII, IX, and X).

As to Valencia, the Plaintiffs seek recovery under Title IX of the Civil Rights Act, 20 U.S.C. §§ 1681–1688, alleging differential treatment and sexual harassment (Counts V and VI). The Plaintiffs also allege that Valencia is liable under Florida law for the alleged torts of its employees (Counts VIII and XI), as well as negligent supervision and retention (Count XII).

## II. Procedural History

On October 29, 2015, the Court granted the Defendants' Motion to Dismiss the Second Amendment Complaint (Doc. 50). The Court found that there were no violations of the First or Fourth Amendment because the Plaintiffs' objections and complaints did not constitute protected speech and the transvaginal ultrasounds were not searches. (*Id.* at 8–9.) The Eleventh Circuit disagreed on both issues and held that the Plaintiffs' objections were protected speech and that the ultrasounds were searches. (Doc. 56, 57.) The order to dismiss was reversed and the case was remanded for further proceedings. (*Id.*) On April 11, 2017, the Plaintiffs filed their Third Amended Complaint (Doc. 75), which the Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

### III. Motion to Dismiss Standard

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of the complaint—it does not reach the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In ruling on a motion to dismiss, the Court accepts factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). The Court limits its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

Federal Rule of Civil Procedure 8(a)(2) mandates that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson*, 35 U.S. 41, 47 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The plaintiff must allege facts that raise a right to relief above the speculative level and indicate the presence of the required elements. *Twombly*, 550 U.S. at 555; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (internal citations omitted). "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. Constitutional Claims Against Individual Defendants

The Plaintiffs claim that the Individual Defendants are liable for the deprivation of their constitutional rights under 42 U.S.C. §1983. Specifically, the Plaintiffs claim that their First, Fourth, and Fourteenth Amendment rights were violated.

### A. First Amendment Retaliation Claim

"To establish a First Amendment retaliation claim, the plaintiff must show 'first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Jane Doe I v. Valencia Coll. Bd. of Trustees*, 838 F.3d 1207, 1211 (11th Cir. 2017) (quoting *Keeton v. Anderson–Wiley*, 664 F.3d 865, 878 (11th Cir. 2011)). The Eleventh Circuit has held that the Plaintiffs' objections to the transvaginal ultrasound procedure constituted protected speech. *Id.* at 1211–12. Therefore, only the final two elements are in contention.

The Plaintiffs have adequately pled facts meeting the adverse action element. "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Ziegler v. Martin Cty. Sch. Dist.*, 831 F.3d 1309, 1328 (11th Cir. 2016) (quoting *Bennet v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). The adverse action complained of here consists of threats to reduce the Plaintiffs' grades; threats to exclude the Plaintiffs from practicing transvaginal ultrasounds; threats to blacklist the Plaintiffs at local hospitals; and threats to force the Plaintiffs out of school. (Doc.

75 ¶ 45.) Given these threats, it is reasonable to conclude that a person of ordinary firmness would withhold her objections rather than risk her academic standing and future employment. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 500–01 (4th Cir. 2005) (finding that the adverse action element was adequately pled when a university allegedly awarded a failing grade in response to a student's complaint).

The Plaintiffs have also adequately pleaded causal connection. To establish a causal connection, a plaintiff "must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Keeton*, 664 F.3d at 878 (quoting *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011)). Viewing the Plaintiffs' allegations in a light most favorable to them, the Court can infer that the Individual Defendants' threats were issued in retaliation for the Plaintiffs' complaints, "at least in part." *Bailey v. Wheeler*, 843 F.3d 473, 483 (11th Cir. 2016). Therefore, the Plaintiffs have sufficiently pleaded a claim for retaliation.

### B. Fourth Amendment Claim – Search

Uglade and Milward both claim that the Individual Defendants violated their Fourth Amendment rights by forcing them to undergo transvaginal ultrasounds. (Doc. 75 ¶ 95.) Specifically, Ugalde and Milward claim that the ultrasounds violated their right to be free from unreasonable searches. The Eleventh Circuit has held that the ultrasounds in question constituted searches under the Fourth Amendment, and the Individual Defendants do not argue otherwise. *Valencia Coll. Bd. of Trustees*, 838 F.3d at 1212–13. Instead, the Individual Defendants argue that any searches related to the ultrasounds were constitutional because Ugalde and Milward consented.

"A consensual search is constitutional if it is voluntary; if it is the product of 'essentially free and unconstrained choice.'" *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). "[C]onsent must be 'in fact voluntarily given, and not the result of duress or coercion, express or implied.'" *Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 874 (11th Cir. 2013) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973)). "Mandatory consent" that is merely submission to authority without an "understanding and intentional waiver of a constitutional right" will not do. *Id.* (quotations omitted).

Here, Milward and Ugalde have sufficiently alleged that they did not consent to the transvaginal ultrasounds because their participation allegedly resulted from coercion. Indeed, they allege that they initially objected to the procedure and only relented after the Individual Defendants threatened their grades, future employment, and involvement in classroom labs. (Doc. 75 ¶¶ 45, 96–100.) In other words, Milward and Uglade were forced to choose between undergoing the procedure and receiving all the benefits of Valencia's sonography program—a choice that was hardly "free and unconstrained." *Purcell*, 236 F.3d at 1281; *see Lebron v. Sec'y of Fla. Dept. of Children & Families*, 710 F.3d 1202, 1217 (11th Cir. 2013) (holding that consent is involuntary when receipt of a government benefit is conditioned on a waiver of Fourth Amendment rights). Therefore, Milward and Ugalde have sufficiently alleged a claim under the Fourth Amendment.

### C.  Fourteenth Amendment Claim – Privacy

In Count III, Milward and Ugalde claim that the Individual Defendants violated their rights to privacy and bodily integrity under the Fourteenth Amendment. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 849 (1992) ("It is settled now . . . that the Constitution places limits on

a State's right to interfere with a person's most basic decisions about family and parenthood, as well as bodily integrity.") (citation omitted). The Eleventh Circuit has recognized that people have a legitimate expectation of privacy in their persons "including an expectation that one should be able to avoid the unwanted exposure of one's body, especially one's 'private parts.'" *Dawson v. Clayton Cty. Sch. Dist.*, 830 F.3d 1306, 1313–14 (11th Cir. 2016) (quotation and citation omitted).

Here, the Individual Defendants claim that Milward and Ugalde consented to the exposure of their bodies and insertion of the vaginal probe because they voluntarily took part in the sonography procedures. But, again, Milward and Ugalde's have adequately alleged that they did not voluntarily consent to the transvaginal ultrasounds. Rather, they allege that they underwent the procedure only after their grades, employment, and classroom participation were threatened. Therefore, Milward and Ugalde have adequately pleaded a violation of their rights to privacy and bodily integrity.

### D.    Civil Conspiracy

To establish a conspiracy claim under § 1983, plaintiffs "must show among other things, that defendants 'reached an understanding to violate [their] rights.'" *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (quoting *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988)). The Individual Defendants claim that the Plaintiffs have failed to state a conspiracy claim because they have failed to show a violation of their constitutional rights. But, as explained above, the Plaintiffs have adequately asserted violations under the First, Fourth, and Fourteenth Amendments. Therefore, the Defendants' motion fails, and the Plaintiffs' civil conspiracy claim stands.

### E. Qualified Immunity

The Individual Defendants argue that they are entitled to qualified immunity for each of the Plaintiffs' claims arising under § 1983 (Counts I, II, and III). Qualified immunity protects government officials acting within their discretionary authority from "liability for civil damages insofar as their conduct does not violate clearly established statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982). A defendant claiming qualified immunity bears the initial burden of proving that they acted within their discretionary authority. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264–65 (11th Cir. 2004). The burden then falls on the plaintiff to prove that his allegations establish that the defendant violated his clearly established rights. *Id.*

#### 1. Discretionary Authority

Discretionary authority exists where a government official was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1266. When determining whether a defendant acted within his discretionary authority, "the test is not whether the government official acted lawfully. Rather, the court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of the government official's discretionary duties." *Adams v. Franklin*, 11 F. Supp. 2d 1255 (M.D. Ala. 2000) (citing *Sims v. Metro. Dade Cty.*, 1230, 1236 (11th Cir. 1992)). The Plaintiffs' admit that the Individual Defendants were pursuing job-related goals throughout their interactions with the Plaintiffs. (Doc. 88 at 7.) Therefore, the only question for the Court is whether the means used were within their power to use.

As part of the sonography program, students were taught how to perform a transvaginal ultrasound. Allegedly, students were required to undergo transvaginal ultrasounds in order to fully

benefit from the sonography program. (Doc. 75 ¶¶ 35–36.) The Plaintiffs' complaints against the Individual Defendants' arise from how they enforced this policy; namely, by threatening grades, future employment, and participation in labs. (*Id.* ¶ 45.) Thus, even if the Individual Defendants' actions were ultimately unlawful, those actions were reasonably related to the Individual Defendants' discretionary duties as officials enforcing a pedagogical policy. Therefore, the Individual Defendants were acting within their discretionary authority.

### 2. Clearly Established Rights

"A government official's conduct violates clearly established law when, at the time of the alleged conduct, the contours of the right are sufficiently clear that every 'reasonable official would have understood that what he is doing violates that right.'" *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1146 (11th Cir. 2017) (quoting *Ashcroft*, 563 U.S. at 735). "The salient question is whether the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged conduct was unconstitutional." *Id.* (quotation and citation omitted). There is no requirement for a case directly on point, "but precedent must have placed the . . . constitutional question beyond doubt." *Ashcroft*, 563 U.S. at 741.

#### *(a)   First Amendment Claims*

Ever since *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 509 (1969), it has been clearly established that student speech is constitutionally protected unless it "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school." Indeed, the Eleventh Circuit has expressly held that *Tinker* is clearly established law, and found that teachers "should have no problem determining whether a student is engaged in expression." *Holloman*, 370 F.3d at 1278. Additionally, it is clearly established law in the Eleventh Circuit that the government cannot retaliate against citizens for the exercise of their

First Amendment Rights. *See Bennett*, 423 F.3d at 1255. Therefore, the Plaintiffs' First Amendment rights were clearly established and the Individual Defendants are not immune from their claim.

*(b)    Fourth Amendment Claims*

In an effort to show that their Fourth Amendment claims are supported by clearly established law, Milward and Ugalde compare the transvaginal ultrasounds to the strip searches in *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009). But *Safford* does not place the constitutional question encountered here "beyond doubt." *Ashcroft*, 563 U.S. at 741. In *Safford*, a school official searched a thirteen-year-old girl's bra and underpants under suspicion that she had hidden forbidden prescription drugs. *Safford*, 557 U.S. at 368. The Court found the search unconstitutional because requiring the student to expose her breast and pelvic area was not reasonably related to the scope of the circumstances justifying the search. *Id.* at 375 ("the content of the suspicion failed to match the degree of intrusion").

The Supreme Court's holding in *Safford* would not give a reasonable school official in the same circumstances as the Individual Defendants fair warning that their conduct was unlawful. Milward and Ugalde were not children who were strip searched for illicit drugs. They were adults who enrolled themselves in a highly competitive medical program and exposed their bodies as part of an in-class medical procedure. And the Plaintiffs have failed to present any other case that shows the conduct here was prohibited by clearly established law, at least under the Fourth Amendment. Therefore, the Plaintiffs' have failed to show that their rights were clearly established at the time of the complained-of conduct, and the Individual Defendants are immune from the Plaintiffs' Fourth Amendment claims.

### *(c)* *Fourteenth Amendment Claims*

The law has recognized the rights to privacy and bodily integrity at least since *Casey*, 505 U.S. at 849. As part of these rights, the Supreme Court has found "a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261, 278 (1990); *see Washington v. Harper*, 494 U.S. 210, 221–22 (1990) ("The forcible injection of medication into a non-consenting person's body represents a substantial interference with that person's liberty.").

Taking the Plaintiffs' allegations that they did not consent to the transvaginal ultrasound procedures as true, the Individual Defendants were on notice that performing these unwanted medical procedures on un-consenting patient-students was unlawful—especially considering that the Individual Defendants were medical professionals. Therefore, the Plaintiffs have sufficiently alleged a violation of their Fourteenth Amendment rights that were clearly established at the time of the complained-of conduct.

## V. Title IX Claims Against Valencia

Title IX of the Civil Rights Act, 20 U.S.C. §§ 1681–1688, prohibits educational institutions that receive federal aid from discriminating on the basis of sex. 20 U.S.C. § 1681(a). The Plaintiffs claim that Valencia violated Title IX through differential treatment and sexual harassment.

### A. Differential Treatment

To establish a claim for differential treatment under Title IX a plaintiff must allege "(1) that she was excluded from participation in, denied benefits of, or subjected to discrimination in an educational program; (2) that the exclusion was on the basis of sex; and (3) that the defendant receives federal financial assistance." *Palmer ex. rel. Palmer v. Santa Rosa Cty., Fla. Sch. Bd.*,

No. 3:05CV218/MCR, 2005 WL 3338724, at *4 (N.D. Fla. Dec. 8, 2005) (citing *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996)). There is no dispute that Valencia receives federal financial assistance, therefore, only the first two elements are at issue.

Here, the Plaintiffs allege that Valencia discriminated against them because they were forced to choose between undergoing transvaginal ultrasounds or suffer consequences in the form of lower grades and restricted in-class practice, while no similar requirement existed for a male student in the same program.[1] In other words, the Plaintiffs' allege that Valencia held women in its sonography program to a different standard than its male students because of their sex. These allegations are sufficient to establish a claim of differential treatment under Title IX.

### B.    Sexual Harassment

Sexual harassment consists of "verbal or physical abuse of a sexual nature, including lewd remarks, salacious looks, and unwelcome touching." Black's Law Dictionary 1407 (8th ed. 2004). Title IX creates a private cause of action against schools for teacher-on-student sexual harassment when "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Hill v. Cundiff*, 797 F.3d 948, 968 (11th Cir. 2015) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1999)). In this context, deliberate indifference is "an official decision by the [funding] recipient not to remedy the violation." *Id.*

Milward and Ugalde allege that they were subjected to sexual harassment at the hands of their teachers when they were coerced into undergoing the transvaginal ultrasounds. (Doc. 75 ¶ 141.) During these ultrasounds, Milward and Ugalde were forced to expose their genitals to their

---

[1] For instance, Valencia might have conditioned male student participation in labs on their agreement to undergo prostate ultrasounds. (Doc. 75 ¶ 135; Doc. 88 at 13.)

classmates and teachers, and the Individual Defendants instructed students performing the ultrasounds to move the probe "back and forth and up and down in the vaginal canal" when such motion was not medically necessary. (*Id.* ¶ 142.) Considering Milward and Uglade's previous objections to the procedure, this unnecessary motion could certainly be unwelcome touching of a sexual nature, that is, sexual harassment.

The Plaintiffs further allege that they reported this alleged harassment to Defendants Ball and Shaheen, respectively, the Program Chair and Laboratory Coordinator of the sonography program, as well as Valencia's Dean of Academic Affairs and the President of Valencia's west campus. (*Id.* ¶¶ 45–46, 69–71.) Allegedly all of these school officials had the power to remedy the situation, yet no corrective action resulted. Given the number of reports to the various officials, the Court can infer that this lack of corrective action resulted from deliberate indifference. Therefore, the Plaintiffs have sufficiently pleaded sexual harassment under Title IX.

## VI. State Law Claims

### A. Sovereign Immunity and Florida State-Law Claims

The Plaintiffs have brought various state law claims against both Valencia and the Individual Defendants. The success on these claims hinges, in part, on Florida Statute § 768.28. In that statute, Florida has expressly waived sovereign immunity and authorized claims against government entities for torts committed by their employees. Fla. Stat. § 768.28(1).

Specifically, § 768.28(9)(a) states:

> The ***exclusive*** remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner

> exhibiting wanton and willful disregard of human rights, safety, or property.

*Id.* (emphasis added). Thus, Valencia is not entitled to immunity so long as the Individual Defendants were acting within the scope of their employment and the alleged tort was not committed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* On the other hand, the Individual Defendants cannot be held liable for tortious acts committed within the scope of their employment unless said acts were committed in bad faith.

Faced with this conundrum, the Plaintiffs have alleged that the Individual Defendants acted both with and without bad faith, alternatively. Eventually the Plaintiffs will have to choose one or the other. But at this stage in the case the Plaintiffs have adequately pleaded each in the alternative.

Where the Plaintiffs bring state-law claims against the Individual Defendants, they have sufficiently alleged facts establishing bad faith. Bad faith "is equivalent to actual malice, which depends on subjective intent." *Dunn v. City of Boynton Beach*, 192 F. Supp. 3d 1310, 1326 (S.D. Fla. 2016). The Plaintiffs have alleged that they objected to the transvaginal ultrasounds. Consequently, the Individual Defendants harassed and threatened the Plaintiffs to coerce them into undergoing the procedure in a classroom open to peers, teachers, and others. Milward and Ugalde eventually succumbed to this campaign of harassment, whereas Rose suffered the consequences academically. These allegations plausibly establish the bad faith required for individual liability under § 768.28(9)(a).

In their claims against Valencia, the Plaintiffs allege the same facts but simply make no claim of bad faith. Therefore, the Plaintiff is permitted to sue Valencia for the alleged torts of the Individual Defendants so long as they adequately allege the complained-of torts. *See Lewis v. City*

*of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (finding that a state or subsidiary of the state can be sued so long as "the circumstances alleged would subject a private person to liability under Florida law").

   **B.   Battery**

      **1.   Bugnacki and Amodt**

Ugalde and Milward bring a claim for battery against Bugnacki and Amodt. To establish a civil cause of action for battery under Florida law, "a plaintiff must prove (1) the intent to cause a harmful or offensive contact with another person, and (2) an offensive contact that directly or indirectly results." *Long v. Baker*, 37 F. Supp. 3d 1243, 1252 (M.D. Fla. 2014) (citation and quotation marks omitted).

Here, Milward and Ugalde allege that they objected to the transvaginal ultrasound procedure, but the Individual Defendants proceeded to either insert transvaginal ultrasound probes into their vaginas or direct other students to do so. (Doc. 75 ¶¶ 158–161.) Milward and Uglade further allege that that the Individual Defendants intended to cause harmful or offensive conduct through these ultrasound procedures. (*Id.*)

The Defendants argue that Milward and Ugalde have failed to state a claim for battery because they consented to the ultrasound procedure. But consent is an affirmative defense to battery which must be proven by a preponderance of the evidence. *Hernandez v. K-Mart Corp.*, 497 So. 2d 1259, 1260 (Fla. Dist. Ct. App. 1986). And, "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). Therefore, the Defendants' motion fails and Milward and Ugalde have sufficiently pleaded battery against the Individual Defendants.

### 2. Valencia

Milward and Ugalde claim that Valencia is liable for the battery committed by its employees, Bugnacki and Amodt. Clearly, there are sufficient facts alleged showing that these ultrasound procedures were within the scope of Bugnacki and Amodt's employment—these procedures occurred in an academic setting as part of a class. And, as explained above, Milward and Ugalde have omitted their allegation that the alleged battery occurred in bad faith in an effort to establish liability against Valencia. In short, because the battery claim is sufficiently alleged against the Bugnacki and Amodt, the claim is also sufficiently alleged against Valencia. *Lewis*, 260 F.3d at 1262.

### C. Intentional Infliction of Emotional Distress

All Plaintiffs bring an action against the Individual Defendants for intentional infliction of emotional distress (IIED). To establish such a claim in Florida, a plaintiff must allege "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990). The Defendants only challenge the Plaintiffs' claim insofar as the outrageousness of the conduct alleged.

"Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous." *Frias v. Demings*, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011) (quotation omitted). Conduct is "outrageous" if it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985) (quotation omitted). Allegedly outrageous conduct is measured objectively as an issue of law for the court. *Vernon v. Medical Mgmt. Assocs. Margate, Inc.*, 912 F. Supp. 1549, 1557 (S.D. Fla. 1996).

Here, the Plaintiffs allege that the Defendants acted outrageously "(1) by harassing and threatening unwilling students into submitting to invasive transvaginal ultrasounds, and (2) by inserting, or directing the insertion of, invasive ultrasound probes into unwilling students lying nude within the view of their instructors, peers[,] and casual passersby." (Doc. 88 at 19–20.) At this stage in the claim, taking all inferences in a light most favorable to the nonmoving party, the Plaintiffs have sufficiently alleged that the Individual Defendants' conduct was outrageous.

### D. Negligent Infliction of Emotional Distress

#### 1. Bugnacki and Amodt

Ugalde alone brings a claim for negligent infliction of emotional distress (NIED) against Bugnacki and Amodt. There are two paths to establish a claim for NIED: "(1) one experiences a physical impact during the incident and suffers emotional distress stemming from that incident; or (2) one does not experience a physical impact but is involved in the incident and experiences emotional distress so severe that it manifests as physical injury." *Seybold v. Clapis*, 966 F. Supp. 2d 1312, 1315 (M.D. Fla. 2013) (citing *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007)).

The Defendants' argue that Ugalde's claim is insufficient because she failed to allege that she suffered a discernable physical injury and that the physical injury was caused by psychological trauma. However, Ugalde has not alleged psychological trauma manifesting in physical injury. Rather, her theory of recovery arises under the physical impact theory for NIED.

"The threshold for what constitutes an impact is low, as any outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, [that] touch[es] or enter[s] into the plaintiff's body qualifies." *Id.* (quotation omitted). Ugalde alleges that she suffered transvaginal ultrasounds where an ultrasound probe was inserted

into her vagina. (Doc. 75 ¶¶ 187–97.) Clearly, this is a physical impact. *Seybold*, 966 F. Supp. 2d at 1315. Ugalde further alleges that she suffered severe emotional distress as a result of said impact. Therefore, she has stated a claim for NIED against the Individual Defendants.

### 2. Valencia

Just as in the battery claim, the alleged facts clearly show that these transvaginal ultrasounds occurred within the scope of employment. Additionally, Ugalde has omitted any claim that the NIED was committed in bad faith in her count against Valencia. Therefore, the NIED claim against Valencia is sufficiently alleged.

### E. Negligent Retention and Hiring

Valencia challenges the Plaintiffs' negligent-retention-and-hiring claim asserting only that it is entitled to sovereign immunity. It is true that "under Florida law, a governmental entity is immune from tort liability based on actions that involve its 'discretionary functions'" such as hiring and retention. *Shehada v. Tavss*, 965 F. Supp. 1358, 1378 (S.D. Fla. 2013) (quoting *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1117 (11th Cir. 2005)). But Valencia has submitted no argument as to how the Plaintiffs' allegations are insufficient beyond a general argument that it is immune. Therefore, the Plaintiffs' negligent-retention-and-hiring claim stands.

## VII. Conclusion

It is, therefore,

**ORDERED** that the Defendants' Motion to Dismiss (Doc. 83) is **GRANTED** in part and **DENIED** in part. Count II is dismissed with prejudice, whereas all other claims stand.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 4, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party